UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

HALO TECHNOLOGY HOLDINGS, INC.   CIVIL ACTION NO.
F/K/A WARP TECHNOLOGY HOLDINGS, INC.,

        Plaintiff,   **07 CIV. 3426**

-against-   COMPLAINT AND
        JURY DEMAND   **BRIEANT**

RANDALL COOPER,

        Defendant.   APRIL 25, 2007

-----------------------------------------------------------------

Plaintiff Halo Technology Holdings, Inc. f/k/a Warp Technology Holdings, Inc., through its attorneys, the Law Offices of David W. Rubin, as and for its complaint against defendant Randall Cooper, states as follows upon information and belief:

JURISDICTION STATEMENT

1. This is a civil action for injunctive relief and damages for breach of contract, breach of covenant of good faith and fair dealing, and disgorgement of il-begotton gains under the faithless servant doctrine. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and there is diversity of citizenship between the parties. Plaintiff Halo Technology Holdings, Inc. f/k/a Warp Technology Holdings, Inc. is a corporation established and existing under the laws of the State of Nevada with a principal place of business in Greenwich, Connecticut. Defendant Randall Cooper is a citizen and resident of the State of Georgia.

## VENUE

2.  Venue is proper in this judicial district pursuant to Section 14.7 of the parties Employment Agreement dated January 13, 2006 as the parties agreed to the "exclusive jurisdiction of any state or federal court located in the State of New York...."

## PARTIES

3.  Plaintiff Halo Technology Holdings, Inc. f/k/a Warp Technology Holdings, Inc. (the "Plaintiff") is a corporation established and existing under the laws of the State of Nevada with its principal place of business at 200 Railroad Avenue, Greenwich, Connecticut.

4.  Plaintiff is engaged in the business of acquiring, managing, and selling software companies which develop, sell and/or license software for commercial application.

5.  Defendant Randall Cooper ("Defendant" or "Cooper") is a citizen and resident of Snellville, Georgia.

6.  On or about January 13, 2006, the Defendant Cooper became an employee of the Plaintiff by virtue of a written Employment Agreement between Plaintiff and Cooper (the "Employment Agreement"). Said employment agreement was for an initial term of two (2) years and subsequent one year terms if the terms of such additional employment were mutually agreed upon by Plaintiff and Defendant. Pursuant to said agreement, Defendant Cooper became the Chief Executive Officer of Plaintiff's "human

resources software and solutions sphere of" the Plaintiff. Defendant Cooper was obligated to devote full time to his employment duties and was paid an annual salary of $225,000.00 plus a bonus and other perquisites.

7. Plaintiff's "human resources software and solutions sphere" consists virtually entirely of Plaintiff's sole ownership of an entity named Empagio, Inc. As more fully set forth herein, Empagio, Inc. is a company which was constituted by Plaintiff's acquisition and subsequent merger of three separate companies which were in the business of developing, selling and licensing software for human resource departments.

STATEMENT OF THE CLAIMS

8. This is an action to recover damages suffered by Plaintiff by virtue of Cooper's breach of his Employment Agreement with Plaintiff and his concerted efforts to interfere and sabotage Plaintiff's efforts to sell Empagio for the greatest amount possible, and to enjoin Cooper from continuing to breach his Employment Agreement and continuing his efforts to undermine Plaintiff's attempt to sell Empagio and conduct its business.

9. As more fully set forth herein, Empagio consists of three individual entities that were merged into a single entity with a potential fair market value of over 30 million dollars ($30,000,000.00). In light of the estimated value of Empagio, in the summer of 2006, Plaintiff decided to sell Empagio.

10. In his capacity as Chief Executive Officer, defendant Cooper was responsible for making presentations, attending meetings and furnishing information regarding the company to prospective purchasers who were undertaking due diligence examination of Empagio in furtherance of the potential sale of Empagio. However, Cooper began to undermine Plaintiff's efforts to sell Empagio by making false, disparaging, and misleading statements to potential purchasers, financial backers, and clientele, in violation and derogation of his obligations under the Employment Agreement and of his common law fiduciary duties to his employer.

11. The effect of Cooper's deception and continued breaches of the Employment Agreement was to prevent Plaintiff from securing a genuine purchaser so as to lay the foundation to make his own offer to purchase Empagio for an amount well below its appraised value.

12. In so doing, Cooper breached the Employment Agreement by, <u>inter alia</u>, violating the terms of a Confidentiality, Inventions and Non-Solicitation Agreement attached to and incorporated in the Employment Agreement and violating the Restrictive Covenants contained in the Employment Agreement, which breaches and violations, among others as described herein, permit the entry of immediate injunctive and other equitable relief pursuant to the Employment Agreement.

13. Plaintiff further is entitled to recover damages as a result of defendant Cooper's aforementioned contractual breaches as well as Cooper's breach of the

covenant of good faith and fair dealing contained in the Employment Agreement, and the disgorgement of il-begotton gains paid to Cooper under the faithless servant doctrine.

## BACKGROUND

14. On or about January 13, 2006 the Plaintiff acquired one hundred percent of the issued and outstanding shares of a company known as Empagio, Inc., the principal place of business of which was Atlanta, Georgia. Empagio was the developer and licensor of certain software useful to human resource departments for medium to large companies. The Defendant Cooper was a principal in Empagio.

15. Prior thereto, the Plaintiff had acquired all of the issued and outstanding shares of stock in two additional corporations, the first being Teseract, Inc., a corporation with its principal place of business in San Francisco, California. The second company acquired by Plaintiff was Executive Consultants, Inc., the principal place of business of which was in Pittsburgh, Pennsylvania. The primary business of both Teseract and Executive Consultants was the development, sale and licensing of software for human resource departments.

16. Plaintiff caused Empagio, Teseract and Executive Consultants to be merged into a single company known as Empagio, Inc. ("Empagio").

17. The annual revenues of the newly-constituted Empagio were substantially greater than the revenues of the original Empagio.

18. As a result of the merger, defendant Cooper became an employee of Plaintiff by virtue of the Employment Agreement.

19. In January 2006, subsequent to merging the aforementioned corporations, Plaintiff was advised that Empagio had substantial worth. As such, Plaintiff engaged the services of the investment firm of Montgomery & Company to explore selling Empagio.

20. The value of Empagio was assessed at approximately 30 million dollars ($30,000,000.00).

21. Consistent with his obligations under the Employment Agreement, during the Summer and Fall of 2006, defendant Cooper was instructed by Plaintiff to attend various meetings and advocate the sale of Empagio to prospective purchasers.

22. During these meetings, defendant Cooper began to undermine Plaintiff's efforts to sell Empagio by making false, negative, and disparaging remarks regarding Empagio, including without limitation, representations that:

    a. Cooper personally had a right to first refusal to purchase Empagio;

    b. Cooper intended to exercise the option to purchase; and

    c. If Empagio was sold to a third party other than Cooper and his "group", that certain substantial client's of Empagio would not renew their licensing agreements.

23. Defendant Cooper's aforementioned conduct directly diminished interest in Empagio from prospective purchasers and other interested parties and as a result, prospective purchasers failed to make any genuine offers to Plaintiff to purchase Empagio.

24. In the fall of 2006, defendant Cooper hired Croft & Bender as investment bankers to assist him in attempting to personally acquire Empagio. In conjunction with

the hiring of Croft & Bender, Cooper disclosed to Croft & Bender massive confidential material which was the property of Plaintiff and its subsidiary, which confidential information was subsequently disclosed to various potential financial backers.

25. During this time, and at all times thereafter, defendant Cooper was an employee of Plaintiff whose responsibility was the overall management of Empagio.

26. In furtherance of his efforts to purchase Empagio, defendant Cooper engaged the Primus Group to provide financing for the purchase of Empagio.

27. Throughout the fall of 2006, the Plaintiffs' efforts to sell Empagio were not successful. Defendant Cooper was aware of the lack of success because he was the Chief Executive Officer of Plaintiff with respect to Empagio, because he himself undermined the sale by Plaintiff, and because he was privy to all information regarding the sale of Empagio in his capacity as Chief Executive Officer.

28. On or about January 11, 2007, defendant Cooper issued a letter of intent to Plaintiff to purchase Empagio for 17 million dollars ($17,000,000.00).

29. Plaintiff permitted Cooper to explore the potential purchase of Empagio because it was unaware of defendant Cooper's aforementioned disloyal misconduct and breaches of the Employment Agreement and because it had no other prospects to purchase Empagio.

30. The letter of intent executed by the Plaintiff allowed Defendant Cooper an exclusive right to explore the purchase of Empagio until February 28, 2007 and during

that period of exclusivity Plaintiff was obligated not to engage in discussions with parties other than the Defendant Cooper.

31. During the aforementioned exclusivity period granted by Plaintiff to defendant Cooper, Cooper engaged in further misconduct in his capacity as Chief Executive Officer in an effort to further drive down the purchase price of Empagio and secure the lowest purchase price for himself.

32. Said further misconduct includes, without limitation, the following:

   a. Cooper instructed Empagio employees not to invoice certain clients, including Burlington Northern, notwithstanding that amounts were due. The effect of such reduction in Empagio's cash flow would serve to reduce the purchase price to Cooper even below the price indicated in the letter of intent;

   b. Cooper wrongfully disclosed to Empagio clients that he was purchasing Empagio and encouraged said clients to deal directly with him and not Empagio's management;

   c. During the first week of February, Cooper, among others, began dealing directly with Empagio's clients in order to change the pricing of their license agreements for his personal benefit; and

   d. During the period of exclusivity, Cooper made direct contact with Plaintiff's primary lender, and wrongfully and falsely disclosed that he was purchasing Empagio, in an effort to undermine Plaintiff's status with its financial lender and incite a default or instability with the lender, all in order to further increase the likelihood that Cooper would personally achieve an advantageous purchase price.

33. At the expiration of the exclusivity period, defendant Copper made an offer to purchase Empagio for 14.5 million dollars ($14,500,000.00), substantially less that the amount indicated in the letter of intent, and after Cooper had made a concerted

effort to diminish the value of Empagio in violation of his Employment Agreement, and further in derogation of his fundamental fiduciary duty of loyalty and a prohibition against self-dealing.

34. Plaintiff rejected defendant Cooper's offer.

35. On or about March 9, 2007, Plaintiff entered into a letter agreement with a potential purchaser, Silver Oak, pursuant to which, Silver Oak would purchase 90% of Empagio for 15 million dollars ($15,000,000.00).

36. When defendant Cooper was notified of the impending sale of Empagio to Silver Oak, he responded by informing Plaintiff that events would promptly transpire which would result in Silver Oak ceasing its efforts to purchase Empagio.

37. On March 12, 2007, at the behest of defendant Cooper, a group of Empagio employees wrote directly to Silver Oak informing it that they would not remain with Empagio if Silver Oak purchased it. Also on March 12, 2007, Cooper made clear that he would not cooperate with the due diligence efforts by Silver Oak.

38. As a result of defendant Cooper's aforementioned misconduct, Plaintiff fired Cooper for cause.

39. After being fired, defendant Cooper directly contacted Plaintiff's financial lender and informed it that he was interested in purchasing Empagio if the financial lender imposed financial pressure upon Plaintiff to sell Empagio.

40. On or about March 26, 2007, while Plaintiff was contractually bound with Silver Oak to refrain from further negotiating the sale Empagio, defendant Cooper again

directly contacted Plaintiff's financial lender and notified it that he had raised his offer to purchase Empagio.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST RANDALL COOPER
(Breach of Contract)

41. Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through 40 of the Complaint as if fully set forth herein.

42. Pursuant to the Employment Agreement, defendant Cooper covenanted and agreed to the following:

> During the Employment Term, Employee shall devote Employee's full business time, attention, skill and efforts to the faithful performance of Employee's duties herein, and shall perform the duties and carry out the responsibilities assigned to Employee, to the best of Employee's ability in a diligent, trustworthy, businesslike and efficient manner for the purpose of advancing the interests of the Company. Employee acknowledges that Employee's duties and responsibilities will require Employee's full-time business efforts and agrees that during the Employment Term Employee will not engage in any outside business activities except to the extent that prior written approval has been given by the Chief Executive Officer of the Company for specific activities that do not conflict with the Company's interest or interfere with the performance of Employee's duties hereunder.

(Employment Agreement §4.)

43. Pursuant to the Employment Agreement, Plaintiff and Cooper entered into a Confidentiality, Inventions and Non-Solicitation Agreement, which was attached to and incorporated into the Employment Agreement.

10

44. Pursuant to the Employment Agreement, Cooper acknowledged, among other things, that he "will occupy a position of trust and confidence with the Company after the date of this Employment and during the employment term"; that he "is familiar with the Company's (and its subsidiaries trade secrets and with other proprietary and confidential information concerning the Company (and its subsidiaries) and the Business (and the business of its subsidiaries"); and that his "employment with the Company has special, unique and extraordinary value to the Company and the Company would be irreparably damaged if Employee were to provide services to any person or entity in violation of the provisions of the Employment Agreement." (Employment Agreement, § 10.1)

45. Pursuant to the Employment Agreement, Cooper further covenanted that he would not, during the period of time from the date of the Employment Agreement until one year after his termination,

> except on behalf of the Company, solicit, or participate as employee, agent, consultant, stockholder, director, partner or in any other individual or representative capacity, in any business which solicits business from any person, firm, corporation or other entity, which was a customer, supplier or partner of the Company or any of its subsidiaries during the Employment Term, or from any successor in interest to any such person, firm, corporation or other entity for the purpose of securing business or contracts related to the Business.

(Employment Agreement 10.2)

46. Pursuant to the Employment Agreement, Cooper further agreed that, upon his termination of employment with the Plaintiff, he would immediately return Plaintiff's records, documents, "Tangible Embodiments" and "Proprietary Information" as defined in the applicable agreements, in his possession and copies of such items, as well as other property of the Plaintiff. (Employment Agreement, § 11).

47. Defendant Cooper has breached the terms of the Employment Agreement insofar as he failed to devote his full business time, attention, skill, and efforts to the faithful performance of his duties and failed to perform his duties and carry out the responsibilities assigned to him to the best of his ability, in a diligent, trustworthy, businesslike, and efficient manner for the purpose of advancing the interests of Plaintiff, including without limitation:

    a. Making false, negative, and disparaging remarks regarding Plaintiff and Empagio in direct contravention of the interests of Plaintiff;

    b. Sabotaging and undermining Plaintiff's efforts to sell Empagio to genuine potential purchasers;

    c. Directly contacting, without authorization, Plaintiff's clientele in an effort to advance his personal interests to the detriment of Plaintiff, including, without limitation, (i) wrongfully disclosing to Empagio's clients that he was purchasing Empagio and encouraging clients to deal directly with him, and not Empagio's management, and (ii) seeking to change the pricing of certain of Empagio's clients' licensing agreements;

    d. Directly contacting, without authorization, Plaintiff's financial lender in an effort to advance his personal interests to the detriment of Plaintiff;

12

e. Instructing Empagio's employees to act in a manner adverse to Plaintiff's interests in an effort to advance his own personal interests, including, without limitation, instructing Empagio's employees not to invoice certain clients, notwithstanding that amounts were due, in an effort to reduce Empagio's cash flow to reduce the purchase price of Empagio to Cooper;

f. Attempting to drive down the price of Empagio in an effort to advance his own personal interests to the detriment of Plaintiff;

g. Directly contacting, without authorization, Plaintiff's clientele and disclosing confidential information concerning Plaintiff, as well as false, misleading, and deceptive information concerning Empagio;

h. Directly contacting, without authorization, Plaintiff's financial lender and disclosing confidential information concerning Plaintiff;

i. Disclosing, without authorization, confidential information concerning Plaintiff to the investment bank he hired to purchase Empagio; and

j. Disclosing, without authorization, confidential information concerning Plaintiff to third parties he engaged to assist him in purchasing Empagio.

48. Cooper further breached the Confidentiality, Inventions and Non-Solicitation Agreement, which was attached to and incorporated into the Employment Agreement by disclosing, without authorization, massive confidential material which was the property of Plaintiff and its subsidiaries to Plaintiff's clients, Plaintiff's lender, Cooper's investment bank, and third parties.

49. Cooper further breached the Employment Agreement by violating the Restrictive Covenants contained in Section 10 of the Employment

13

Agreement, insofar as Cooper, individually and in support of his own self interests as opposed to the interests of Plaintiff, during the Restricted Period as defined in the Employment Agreement, solicited business from persons, firms, corporations and/or other entities which were customer(s), supplier(s) or partner(s) of the Plaintiff or its subsidiaries during the Employment Term for the purpose of securing business or contracts related to the Business, as defined in the Employment Agreement.

50. Cooper further breached the Employment Agreement by failing to return to the Plaintiff all such records, documents and "Tangible Embodiments" or "Proprietary Information" in Cooper's possession and all copies of such items, as well as other property of the Plaintiff, upon the termination of his Employment by the Plaintiff.

51. As a direct result of defendant Cooper's aforementioned breaches, Plaintiff has suffered and continues to suffer substantial damages.

<u>AS AND FOR A SECOND CAUSE OF ACTION AGAINST RANDALL COOPER</u>
(Breach of Covenant of Good Faith and Fair Dealing)

52. Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through 51 of the Complaint as if fully set forth herein.

53. The Employment Agreement sets forth the parties respective rights, duties, and obligations of the parties in connection with defendant Cooper's relationship with Plaintiff.

54. The Employment Agreement contains an implied covenant of good faith and fair dealing.

55. By way of his aforementioned conduct, defendant Cooper has destroyed and/or injured the Plaintiff's right to receive the fruits of the Employment Agreement and, by his fraudulent and/or malicious conduct, and/or bad faith and/or other intentional wrongdoing and/or reckless indifference to Plaintiff's rights, has breached and otherwise violated the implied covenant of good faith and fair dealing contained in the Employment Agreement.

56. As a direct result of defendant Cooper's aforementioned breach of the covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer substantial damages.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST RANDALL COOPER
(Injunctive Relief)

57. Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through 56 of the Complaint as if fully set forth herein.

58. Pursuant to the Employment Agreement, Cooper acknowledged and agreed that the agreements and covenants set forth in Sections 9, 10 and 11 of the Employment agreement "are reasonable and necessary for the protection of the Company's business interests, that irreparable injury will result to the Company if Employee breaches any of the terms of said covenants, and that in

the event of Employee's actual or threatened breach of any such covenants, the Company will have no adequate remedy at law. Employee accordingly [agreed] that, in the event of any actual or threatened breach by Employee of any of said covenants, the Company will be entitled to immediate injunctive relief and other equitable relief, without bond and without the necessity of showing actual monetary damages." (Employment Agreement § 12.1)

59. Alternatively, the Plaintiff will suffer irreparable injury pending the outcome of the action as a whole in the absence of immediate prohibitory preliminary injunctive relief enjoining defendant Cooper from continuing to violate his obligations under the Employment Agreement and Plaintiff has no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST RANDALL COOPER
(Disgorgement of Il-begotten gains)

60. Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through 59 of the Complaint as if fully set forth herein.

61. As Empagio's employee, Cooper was obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and was at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

62. Cooper owed a duty of fidelity to Plaintiff and was faithless in the performance of his services.

63. Plaintiff is entitled to recover the return of compensation paid to Cooper during the period of Cooper's disloyalty pursuant to the faithless servant doctrine.

PRAYER FOR RELIEF

WHEREFORE, plaintiff Halo demands judgment against defendant Randall Cooper: (1) awarding Plaintiff compensatory and consequential damages in an amount to be determined at trial; (2) awarding Plaintiff pre- and post-judgment interest; (3) awarding Plaintiff costs, disbursements and attorney's fees incurred in this action; (4) awarding preliminary and permanent injunctive relief enjoining defendant Cooper from continuing to violate and breach the terms of the Employment Agreement and further from soliciting, inducing, engaging or otherwise contacting Plaintiff's current clientele, financial advisors, financial lenders, prospective purchaser, and any of Plaintiff's current employees or personnel; (5) awarding a preliminary and permanent injunction enjoining defendant Cooper from disclosing, discussing, or otherwise disseminating confidential and proprietary information concerning Plaintiff and its business to third parties; (6) awarding a preliminary and permanent injunction requiring Cooper to return to Plaintiff Plaintiff's records, documents, tangible embodiments, and proprietary information, as well as any other property of Plaintiff; and (7) awarding Plaintiff such other relief as the Court deems fair and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all claims so triable.

                    RESPECTFULLY SUBMITTED,

                    Law Offices of David W. Rubin
                    Attorneys for Plaintiff

                    By: _____

                    David W. Rubin, Esq.
                    (Bar No. DR6131)
                    600 Summer Street – Suite 201
                    Stamford, CT 06901
                    Telephone: (203) 353-1404
                    Facsimile: (203) 357-7208